UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____
                               )
JOHN FRANK,                    )
                               )
            Plaintiff,         )
                               )
       v.                      )          CIVIL ACTION
                               )          NO. 14-cv-00858-WGY
CAROLYN W. COLVIN,             )
Acting Commissioner of Social  )
Security,                      )
                               )
            Defendant.         )
_____)

WILLIAM G. YOUNG, U.S. District Judge[1]

March 4, 2016

**MEMORANDUM & ORDER**

I.    **INTRODUCTION**

The Plaintiff John Frank brings this action under 42
U.S.C. § 405(g) against Carolyn W. Colvin, the Acting
Commissioner of the Social Security Administration (the
"Commissioner"), challenging the decision of the
Commissioner denying him disability and insurance benefits
under Title II of the Social Security Act (the "Act").  <u>See</u>

_____

[1] Of the District of Massachusetts, sitting by
designation.  <u>See</u> Order Reassigning Case, May 5, 2015, ECF
No. 18.

Compl., ECF No. 1; Administrative R. ("Admin. R.") 9, ECF
No. 17-2.[2]

## A.    Procedural History

Frank applied for disability insurance benefits and
supplemental security income on April 21, 2013, alleging
that his disability began on April 18, 2013.  Admin. R.
61.  On August 8, 2013, both of these claims were denied.
Id. at 75.  At Frank's request, id. at 79, a hearing
reviewing this initial decision was held before an
Administrative Law Judge (the "hearing officer")[3] on
December 12, 2013, id. at 12.  The hearing officer issued a
decision denying Frank's claims for benefits on January 21,
2014.  Id. at 9.  Frank requested a review of the decision,
id. at 6, which the the Appeals Council denied, rendering
the hearing officer's decision the final disability
determination of the Commissioner, id. at 1.

Frank filed the instant action in the United States
District Court for the Northern District of New York on

---

[2] The administrative record in this case is split
across seven docket entries, labeled ECF No. 17-1 through
17-7.  For the sake of clarity, this opinion cites to the
page numbers in the continuously paginated record as a
whole, rather than to individual docket entries that
correspond to parts of the record.

[3] For an explanation of the Court's use of the term
"hearing officer," see Vega v. Colvin, No. 14-13900-WGY (D.
Mass. Mar. 2, 2016).

July 15, 2014.  Compl., ECF No. 1.[4]  The Commissioner filed

an answer on March 19, 2015.  Def.'s Answer, ECF No. 16.

Admin. R., ECF No. 17.  To date, neither party has filed

any briefs or motions.

**B.   Factual Background**

Frank was born on May 8, 1968.  Admin. R. 31.  He

lives with his wife and his four children in Fulton, New

York.  Id. at 31, 43, 53.  Prior to the onset of his

alleged disability, Frank earned a living cooking and

preparing food at various restaurants, including at the

Mission Restaurant for nine years.  Id. at 32.[5]  Frank

stopped working in January 2013 after undergoing surgery on

his left shoulder.  Id. at 33.  While recovering from this

operation, Frank was prescribed painkillers.  Id. at 33,

205.  Ten weeks after the surgery, Frank had regained full

range of motion in his shoulder and he was cleared to

return to work; however, he testified that he still

---

[4] The Form Complaint was filed with a Civil Cover Sheet
and a Notice of Appeals Council's Action letter affixed.
See Compl.; Notice Appeals Council Action, ECF No. 1-1;
Civ'l Cover Sheet, ECF No. 1-2.

[5] Frank quit school in the sixth grade.  Admin. R. 31.
He earned a GED and received job training in the kitchen
through the prison system.  Id. at 31-32.

experienced some pain when lifting his arm overhead.  Id.
at 40, 203.

On April 18, 2013, one week after Frank had resumed
working at the Mission Restaurant, he quit his job and
checked into a rehabilitation facility for his opiate
addiction.  Id. at 228.  He stayed there for about a month.
Id. at 227-259.  Thereafter, he saw a drug counselor, id.
at 278-313, and was treated by psychiatrist Cecile Matip
("Dr. Matip") about once per month from June 2013 to
January 2014, id. at 327-356.

In a January 2014 evaluation report, Dr. Matip
diagnosed Frank with Post-traumatic Stress Disorder
("PTSD") and Major Depressive Disorder.  Id. at 357-360.
The report also noted serious limitations in Frank's
ability to: (1) "[u]nderstand and remember complex
instructions[,]" (2) "[c]arry out complex instructions[,]"
(3) "make judgments on complex work-related decisions[,]"
(4) "[i]nteract appropriately with the public[,] . . .
supervisor(s)[,] . . . [and] co-workers[,]" and (5)
"respond appropriately to usual work situations[.]"  Id. at
358-359.  Dr. Matip's treatment plan for Frank involved his
attending individual psychotherapy sessions with a licensed
social worker as well as his taking prescribed anti-
depression and anti-anxiety medications.  Id. at 338.

At his administrative hearing, Frank testified about how he was frequently awakened by nightmares of being molested and abused when he was a child. Id. at 41. He also testified that he was diagnosed with chronic obstructive pulmonary disease ("COPD") and emphysema about ten years earlier and that he uses an inhaler if he has an emergency. Id. at 38-39. Frank stated that these emergencies can be triggered by anxiety or walking up too many stairs. Id.

As for Frank's daily activities, Frank testified that on some days, he takes his medication and watches television. Id. at 45. Sometimes he helps make the meals or clean the dishes. Id. at 46. Frank smokes about half a pack of cigarettes a day. Id. at 39. Frank and his wife testified that he is not able to be home alone with his children during the day because two of his children have Attention Deficit Hyperactivity Disorder, and the full-time responsibility of childcare can trigger his anxiety. Id. at 46-47, 59.

## II. DISCUSSION

### A. Standard of Review

In reviewing a final decision of the Commissioner, this Court must evaluate whether the decision was based on the correct legal standards and whether substantial

evidence supports the decision.  42 U.S.C. § 405(g); <u>Clark</u> v. <u>Comm'r of Soc. Sec.</u>, 143 F.3d 115, 118 (2d Cir. 1998). The substantial evidence standard requires "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pratts</u> v. <u>Chater</u>, 94 F.3d 34, 37 (2d Cir. 1996) (quoting <u>Richardson</u> v. <u>Perales</u>, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted).  This standard requires the Court to uphold the hearing officer's findings "[e]ven where the administrative record may also adequately support contrary findings on particular issues . . . so long as they are supported by substantial evidence." <u>Genier</u> v. <u>Astrue</u>, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).

**B.  Social Security Disability Determination**

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505 and 416.905.  In addition, the Act requires that a claimant's

physical or mental impairment or impairments [be] of
such severity that he is not only unable to do his
previous work but cannot, considering his age,
education, and work experience, engage in any other
kind of substantial gainful work which exists in the
national economy, regardless of whether such work
exists in the immediate area in which he lives, or
whether a specific job vacancy exists for him, or
whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

Under Social Security Administration regulations,
hearing officers must follow a five-step, sequential
evaluation to determine whether a claimant is disabled.  20
C.F.R. §§ 404.1520 and 416.920.  A claimant may seek review
of a hearing officer's adverse decision from the Appeals
Council.  Perez v. Chater, 77 F.3d 41, 44 (2d Cir. 1996).
If review is granted, the decision of the Appeals Council
is the final decision of the Commissioner.  Id.  If review
is denied, then the final decision is that of the hearing
officer.  Id.  The final decision is judicially reviewable
pursuant to 42 U.S.C. § 405(g).

**III. THE HEARING OFFICER'S DECISION**

In reaching the ultimate determination that Frank is
not disabled within the meaning of 42 U.S.C. § 423(d), the
hearing officer employed the appropriate five-step
procedure.  See Admin. R. 12-21; infra Part IV.  He
determined that Frank had not engaged in any substantial
gainful activity since April 18, 2013, his alleged

disability onset date.  Id. at 14.  The hearing officer

found that Frank suffered from the severe impairments of

major depressive disorder and PTSD.  Id. at 14.

Additionally, he found Frank to have a "left shoulder

issue, COPD and substance abuse in early remission," which

he determined do not pose more than minimal limitations on

Frank's ability to perform basic work activities and are

therefore not severe.  Id. at 15.

     The hearing officer determined that Frank's severe

impairments do not meet or medically equal the criteria of

listings 12.04 and 12.06 of 20 C.F.R. Part 404, Subpart P,

Appendix 1.  Id.  The hearing officer found that Frank "has

a mild restriction" in activities of daily living,

"moderate difficulties" in social functioning, "moderate

difficulties" in maintaining concentration, persistence or

pace, and that he has experienced no episodes of

"decompensation."  Id. at 15-16.[6]

---

     [6] In making his determination that Frank has "moderate
difficulties" in social functioning, the hearing officer
cited to evidence and opinions from the reports of Dr.
Jeanne Shapiro ("Dr. Shapiro") as well as the Function
Report completed by Frank.  Admin R. 15.  In finding
"moderate difficulties" in "concentration, persistence or
pace," the hearing officer cited to evidence and opinions
from the reports of Dr. Shapiro, Frank's Function Report,
and testimonial evidence from Frank at his hearing.  Id.
Considering these findings -- specifically that Frank's
mental impairments did not result in at least two "marked"
limitations in the categories considered -- the hearing

As to Frank's residual functional capacity, the
hearing officer found that Frank:

> has the residual functional capacity to perform a
> full range of work at all exertional levels and
> he retains the ability to understand and follow
> simple instructions and directions; perform
> simple tasks with supervision and independently;
> maintain attention/concentration for simple
> tasks; regularly attend to a routine and maintain
> a schedule; relate to and interact with others to
> the extent necessary to carry out simple tasks,
> but he should avoid work requiring more complex
> interaction or joint efforts with other coworkers
> to achieve work goals, and he should have no more
> than occasional, brief interaction with the
> public. He can handle reasonable levels of
> simple, work-related stress, in that he can make
> decisions directly related to the performance of
> simple work, and he can handle usual workplace
> changes and interactions associated with simple
> work.

Id. at 17.  In making this determination, the hearing

officer considered Frank's testimony as well as the

opinions of various medical sources.  He assigned "some

weight" to the opinions of consulting psychologist Dr. V.

Reddy, Dr. Jeanne Shapiro, and Dr. Matip, and identified

certain of their observations that were entitled to less

weight.  See id. at 17-18.

The hearing officer found that Frank could not perform

his past relevant work as a cook, but that, given Frank's

_____

officer determined that the "'paragraph B'" criteria were
not satisfied.  Id. at 16.

[ 9 ]

residual functional capacity, age, education, and work experience, there exist jobs in significant numbers in the national economy that Frank can perform. Thus, the hearing officer concluded that Frank is not disabled. Id.

## IV. ANALYSIS

Frank has not filed a brief in this action and therefore has not challenged the hearing officer's decision on any particular grounds. Accordingly, this Court reviews the hearing officer's decision for compliance with the appropriate legal standards and basis in substantial evidence of record. See McEaney v. Comm'n'r of Soc. Sec., 536 F.Supp.2d 252, 257-58 (N.D.N.Y. 2008) (citing Machadio v. Apfel, 276 F.3d 103, 108-109 (2d Cir. 2002)). Because this Court concludes that the hearing officer properly undertook the five-step sequential evaluation process, 20 C.F.R. § 404.1520(a)(4), and that her finding at each step is supported by substantial evidence, the Commissioner's decision must stand.

### A. Substantial Gainful Activity

The first step of the social security disability evaluation is to determine whether the claimant is engaged in substantial gainful activity. Id. § 404.1520(a)(4)(i). Substantial gainful activity is defined as work that "[i]nvolves doing significant and productive physical or

mental duties" and "[i]s done (or intended) for pay or profit." Id. § 404.1510. If the claimant is engaged in such activity, then he or she is not disabled. Id. § 404.1520(a)(4)(i). Here, the hearing officer found that Frank had "not engaged in substantial gainful activity since April 18, 2013, the alleged onset date," Admin. R. 14, and therefore the hearing officer's determination at step one did not render Frank ineligible for disability benefits.

### B. Medical Severity of Impairments

Steps two and three of the sequential evaluation concern the medical severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii)-(iii). A hearing officer's analysis may terminate at one of these steps in two scenarios. First, if a claimant suffers no severe impairments, he or she is not disabled. Id. § 404.1520(a)(4)(ii). Second, if a claimant suffers from an impairment listed in the regulations' appendix, 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (the "Appendix"), then he or she is disabled. Id. § 404.1520(a)(4)(iii). If neither of these circumstances are present -- that is, the claimant suffers from a severe impairment, but such impairment does not satisfy the criteria of one of the Appendix listings -- then the hearing officer must proceed to evaluate the

claimant's residual functional capacity and move on to step
four of the sequential inquiry.

### 1. Step Two Analysis

At step two of the disability determination
evaluation, the hearing officer considers whether the
claimant has a medically severe impairment. 20 C.F.R. §
404.1520(a)(4)(ii). This step is generally limited to
"screen[ing] out de minimis claims," Dixon v. Shalala, 54
F.3d 1019, 1030 (2d Cir. 1995). The "mere presence of a
disease or impairment, or establishing that a person has
been diagnosed or treated for a disease or impairment" is
not, however, itself sufficient to render a condition
"severe." Coleman v. Shalala, 895 F.Supp.50, 53 (S.D.N.Y.
1995).

In the present case, the hearing officer determined
based on medical reports and testimonial evidence that
Frank's major depressive disorder and PTSD were "severe"
impairments under the regulations. Admin. R. 14. The
hearing officer found that Frank's alleged left shoulder
issue, COPD, and substance abuse in early remission did not
impose more than minimal limitations on Frank's ability to
perform basic work activities and therefore were not severe

impairments.  Id. at 14-15.  These findings are supported
by substantial evidence in the record.[7]

### 2.  Step Three Analysis

At step three of the evaluation, the hearing officer
must determine whether a claimant's impairments meet or
medically equal the criteria of an impairment listed in the
Appendix.  If they do not, then the hearing officer must
proceed to determine the claimant's residual functional
capacity, which is then incorporated into the step-four
analysis.

### a.  Appendix Listings

The hearing officer considered Frank's condition in
connection with the impairments listed in subsections 12.04
and 12.06 of the regulations, and found that Frank's

---

[7] With regard to the left shoulder, Frank's medical
record shows that ten weeks after he underwent surgery, he
was medically cleared for "full duty" with "no
restrictions," and his doctor remarked that Franks
"look[ed] great."  Id. at 203.  In finding that Frank's
COPD did not present more than minimal limitations, the
hearing officer relied on Frank's own testimony that he
takes medication for the condition, is only bothered by
extreme temperatures or going up too many flights of
stairs, and carries an inhaler which he can use if an
emergency arises.  Id. at 14-15, 38-40.  As for Frank's
substance abuse, Frank testified, and the record confirms,
that he relapsed only once after his April 2013 treatment,
in June 2013, and has not had any similar episodes since
that time.  Id. at 42-43.

impairments did not meet the criteria in either of these

listings.[8]

Each of the hearing officer's findings under this step

is properly supported by medical evidence in the record as

well as Frank's testimony.[9]  Moreover, the hearing officer's

conclusion that Frank does not have "marked restriction of

activities of daily living" or "complete inability to

function independently outside the area of [his] home," 20

C.F.R. Pt. 404, Subpt. P, App'x 1, is supported by Frank's

testimony and that of his wife that Frank attends meetings

and appointments, occasionally goes grocery shopping, and

attends his children's school functions.  Admin. R. 40–57.

### b.    Residual Functional Capacity

---

[8] Subsection 12.04 of the relevant regulations provides guidance on evaluating affective disorders.  20 C.F.R. Pt. 404, Subpt. P, App'x 1.  In order for a claimant's impairment to be deemed "severe," the hearing officer must find that the criteria listed in paragraphs A and B are satisfied, or that criteria in paragraph C are satisfied. Id.  Subsection 12.06 covers anxiety disorders.  Id.  An impairment meets the severity requirements of that subsection when the criteria listed in paragraphs A and B, or paragraphs A and C, are satisfied.  Id.

[9] For example, the hearing officer supported his determination that Frank only has moderate difficulties in social functioning with reference to reports from Dr. Shapiro stating that Frank "gets along with friends and family some of the time" and appeared "relaxed and comfortable" or "calm."  Admin. R. 15.  The hearing officer also cited Frank's own statement in his Functioning Report that he does not have problems getting along with friends, neighbors, or others, and that he has never lost a job because of problems getting along with people.  Id.

Having found that Frank's impairments do not satisfy the criteria of one of the listings in the Appendix, the hearing officer properly proceeded to evaluate Frank's residual functional capacity. A claimant's residual functional capacity is "the most [he] can do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). In arriving at Frank's residual functional capacity, quoted supra Part III, the hearing officer here appropriately considered and weighed the opinions of Frank's treating physicians, consistent with the treating physician rule.[10] The hearing

---

[10] Under the "treating physician rule," a hearing officer must give controlling weight to the opinion of a claimant's treating physician as to the nature and severity of a claimant's impairment so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); see also Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008). The treating physician's opinion "is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with . . . the opinions of other medical experts . . . for [g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Burgess, 537 F.3d at 128.

If a hearing officer decides that a treating physician's opinion is not to be given "controlling" weight, she must then determine the proper weight to give that opinion by evaluating (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist covering the particular medical issues. Burgess, 537 F.3d at 129; see also 20 C.F.R. § 404.1527(d)(2)-(5). The hearing officer "must comprehensively set forth [her] reasons for

officer did not err by assigning the opinion of treating
physician Dr. Matip as to Frank's "marked limitations" in
socialization only "some weight," Admin. R. 17, because
this finding is inconsistent with the record as a whole,
including, for example, Dr. Shapiro's opinion, see id. at
266-67 (finding Frank to be "cooperative with an adequate
manner of relating, social skills and overall presentation"
and to possess adequate "expressive and receptive
language," "coherent and goal-directed" thought processes,
a full range" of affect, a "calm" mood, and "intact"
attention and concentration).  Moreover, the hearing
officer considered each of the requisite factors in
determining how much weight to assign to Dr. Matip's
opinion, see 20 C.F.R. § 404.1527(d)(2)-(5), and adequately
explained his reasoning, see Admin. R. 17-19.  The hearing
officer also provided "good reasons," as required by the
regulations, for according the opinion of Dr. Shapiro "some
weight."  See Admin. R. 17-19.  As the hearing officer
points out, Dr. Shapiro did not cite evidence to support
the one marked limitation she found, id. at 18, and she

---

the weight assigned to a treating physician's opinion."
Burgess, 537 F.3d at 129 (internal quotation marks and
citation omitted); see also 20 C.F.R. § 404.1527(d)(2).

described Frank as calm, relaxed and comfortable, id. at 267.

There is also substantial evidence to support the hearing officer's finding that Frank's statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely credible. Where the record evidence does not support a claimant's testimony, the hearing officer must employ a two-step analysis to evaluate the claimant's reported symptoms. See 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186 (July 2, 1996). First, the hearing officer must determine whether, based on the objective medical evidence, a claimant's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); SSR 96-7p. Second, the hearing officer must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. See id.

Frank made various claims about the experience and effects of his mental conditions, stating that he does not like to go out, has difficulty paying attention and trouble with authority figures, has problems with short-term memory, and takes naps during the day because of sleeping disorders. Admin. R. 161-69. The hearing officer found

that Frank's medically determinable impairments could reasonably be expected to cause the symptoms he alleges, but declined to fully credit Frank's statements concerning their severity and the functional limitations they precipitate. Id. at 19.

There is substantial evidence to support the hearing officer's conclusion. For example, Dr. Shapiro's examination of Frank revealed that Frank could engage in social interactions and was calm, relaxed, and comfortable, his speech was intelligible, and his thought processes were coherent and goal-oriented. Id. at 66. Frank also demonstrated the ability to perform simple counting, and Dr. Shapiro noted Frank's attention and concentration are intact. Id. In addition, Frank's Global Assessment of Functioning ("GAF") scores of 55-60 from his treating social workers are consistent with no more than moderate symptoms or moderate difficulty. Id. at 74, 127. Thus, the hearing officer' did not err in determining that Frank's reports of the effects of his symptoms on his ability to work were not entirely credible.

### C.   Ability to Perform Past Relevant Work

Step four of the disability analysis asks whether a claimant is capable of performing his past work, despite his or her impairments. 20 C.F.R. § 404.1520(a)(4)(iv).

[18]

If a claimant's residual functional capacity allows the claimant to perform his or her past relevant work, then the claimant is not disabled.  Id.  Here, the hearing officer determined that Frank's residual functional capacity precluded him from performing his past work as a cook, and accordingly moved on to the final step of the disability evaluation.  Admin. R. 19.

**D.   Ability to Adjust to Other Work**

At the fifth and final step of the sequential evaluation process, the hearing officer must consider whether, given a "claimant's residual functional capacity and his age, education, and work experience . . . he can make an adjustment to other work[,]" in which case the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(v). This involves consideration of both exertional and nonexertional limitations.[11]  In making their determination at step five, hearing officers may rely on the Medical Vocational Guidelines (the "Vocational Guidelines"), 20 C.F.R. Pt. 404, without vocational expert testimony, so

---

[11] Exertional limitations affect an individual's "ability to meet the strength demands of jobs[,]" and in turn limit the individual to jobs at a certain "exertional levels (sedentary, light, medium, heavy, and very heavy)[.]"  20 C.F.R. § 404.1569a(a).  Nonexertional limitations, in contrast, are those that affect some other job demand besides strength.  Id. § 404.1569a(c).

long as those guidelines "adequately reflect a claimant's condition." Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986). Such is generally the case when a claimant suffers exertional impairments only, and the relevant factors (age, education, work experience, residual functional capacity) line up with an entry in the Vocational Guidelines. See Hendrickson v. Astrue, Civ. No. 5:11-927, 2012 WL 7784156, at *4 (N.D.N.Y. Dec. 11, 2012). If a claimant also suffers nonexertional impairments, and those impairments "significantly limit the range of work permitted by his exertional limitations[,]" reliance on the Vocational Guidelines is improper. Bapp, 802 F.2d at 605-606 (internal quotation marks and citation omitted).[12]

Where a claimant suffers non-exertional limitations only, the hearing officer is directed to consider the effect of such nonexertional limitations on the claimant's occupational base, and the question of "whether the person can be expected to make a vocational adjustment considering the interaction of his or her remaining occupational base with his or her age, education, and work experience." SSR 85-15, 1985 WL 56857 (Jan. 1, 1985). In cases where the

_____

[12] A nonexertional limitation is "significant" if it "so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Bapp, 802 F.2d at 606.

claimant's nonexertional limitations stem from a mental impairment that is insufficient to render a finding of disabled at any earlier step in the sequential evaluation, but that nonetheless "prevent[s] the [claimant] from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work." <u>Id.</u>

This final scenario is the one the hearing officer was presented with here. The hearing officer determined that Frank had no exertional limitations (<u>i.e.</u>, he could perform work at any exertional level). Admin. R. 17, 20. He then concluded that although Frank suffers nonexertional limitations that "compromise[]" Frank's job performance capacity, Frank is still capable of performing unskilled work, and thus is not disabled. <u>See id.</u> at 20 (finding Frank's "[nonexertional] limitations have little or no effect on the occupational base of unskilled work at all levels"). It was appropriate for the hearing officer to rely on the Vocational Guidelines because he properly determined that Frank's nonexertional impairments did not significantly diminish Frank's occupational base. Given

the nature of unskilled work[13] and Frank's residual

functional capacity, this conclusion is supported by

substantial evidence.

## V.    CONCLUSION

For the foregoing reasons, the Court GRANTS the

Commissioner's prayer for judgment dismissing Frank's

complaint and affirming the Commissioner's decision, ECF

No. 16.

**SO ORDERED.**


/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

---

[13] "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."  SSR 85-15.